# EXHIBIT A

```
1                   UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF MARYLAND
2
    IN RE:                          *   Case No. 01-21039-DK
3                                   *
                                    *
4                                   *   Chapter 7
    FINAL ANALYSIS, INC.            *
5                                   *
                                    *   Greenbelt, Maryland
6        Debtor                     *   November 4, 2003
                                    *   10:29 a.m.
7   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
                    TRANSCRIPT OF HEARING ON:
8        SECOND APPLICATION FOR COMPENSATION; OPPOSITION
                BEFORE THE HONORABLE DUNCAN W. KEIR
9                UNITED STATES BANKRUPTCY JUDGE

10  APPEARANCES:

11  For the Trustee,
    Cheryl Rose:                    JAMES M. HOFFMAN
12                                  11921 Rockville Pike
                                    Suite 300
13                                  Rockville, Maryland 20852

14  For Claimant,
    Michael H. Ahan:               BRUCE K. TRAUBEN
15                                 Dorsey & Whitney, LLP
                                   1001 Pennsylvania Avenue, N.W.
16                                 Suite 400 South
                                   Washington, D.C. 20004
17
    For Nader Modanlo:             CHARLES LEMLEY
18                                 Wiley, Rein & Fielding

19  Audio Reporter:                MAGGIE FERERE, ECRO
                                   United States Bankruptcy Court
20                                 6500 Cherrywood Lane
                                   Suite 300
21                                 Greenbelt, Maryland 20770
                                   (301) 344-3318
22
    Transcriber:                   DANIELLE HAHN
23                                 964 E St. Clair Street
                                   Hagerstown, Maryland 21740
24                                 (301) 733-6866

25  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.
```

1    Modanlo requested that reflected the status of --

2            THE COURT:    All right.    Now, let's -- let's take the

3    latter first.

4            That settlement is the one already approved by this

5    court upon motion.    That is the settlement with the Plaintiffs,

6    correct?

7            MR. HOFFMAN:    Yes, Your Honor.    That is the

8    100,000-dollar settlement.

9            THE COURT:    Right.    What is it that you're asking for

10   that has not already been made available concerning that

11   settlement which this court has already approved?

12           MR. LEMLEY:    Your Honor, this court approved the

13   settlement, but according to the motion for protective order the

14   settlement hasn't been finalized.

15           And the problem is when the Court approved the motion

16   for settlement, it set forth the terms of the settlement, but it

17   said that the releases between the parties would be governed by

18   a separate joint tort feasor release.    And that's the critical

19   part, what was released?

20           The -- the basis for the fee application is the

21   benefit bestowed on the estate by settling these claims for a

22   maximum of $100,000, but we've never seen the release.    And when

23   we asked for it, we were told it doesn't exist.

24           THE COURT:    Has a joint tort feasor release or any

25   other form of release in conjunction with or in any way related

page number

1   to this 100,000-dollar settlement been executed?

2              MR. HOFFMAN:   No.

3              THE COURT:   Has any other document describing,

4   evidencing, in full or in partial execution of or otherwise

5   memorializing the settlement been entered into, other than those

6   that have been filed with this court in the open record?

7              MR. HOFFMAN:   No, Your Honor.

8              THE COURT:   I'm probably going where I am going to

9   regret it, but why not?

10             You've come to this court and described a settlement,

11  obtained an order approving the Trustee's authority to enter

12  into that settlement.  That's been some time ago.  Why not?

13             MR. HOFFMAN:   A proposed agreement was sent to

14  opposing counsel.  Opposing counsel has indicated that he has

15  comments to it.  Opposing counsel is also fighting many battles

16  in the Circuit Court.

17             THE COURT:   Now, opposing counsel, you're talking

18  about counsel --

19             MR. HOFFMAN:   Plaintiff's counsel, (inaudible).

20             THE COURT:   Counsel for the --

21             MR. HOFFMAN:   Derivative Plaintiffs.

22             THE COURT:   -- derivative Plaintiffs?

23             MR. HOFFMAN:   Yes, Your Honor.  The Trustee's counsel

24  has not received back comments to the proposed language.

25             THE COURT:   Now, having heard that, what is it that

1   you want to see that you assert is necessary to this issue of

2   compensation?

3          MR. LEMLEY:   Your Honor, as to the release with the

4   Plaintiffs --

5          THE COURT:   That's correct.  We're --

6          MR. LEMLEY:   -- if there is --

7          THE COURT:   -- we're going to have to go to the other

8   one, which I think might even be more difficult, but let's state

9   one at a time so that I can keep it straight.

10         MR. LEMLEY:   As to the release with the Plaintiffs,

11  if -- if what is before the Court that there has not been a

12  release obtained from the Plaintiffs --

13         THE COURT:   What Mr. Hoffman has just stated on the

14  record is that there has been no written agreement executed.

15  And I think I described it exhaustively in terms of whether it's

16  a settlement agreement, a release, or any other form of document

17  memorializing, evidencing, embodying, or in part or in whole

18  executing such settlement, and the answer has been no.  The

19  lawyers are -- well, I won't say quibbling -- are still not in

20  agreement as to the language.

21         So what is it that you want?

22         MR. LEMLEY:   Your Honor, this applies more to -- I'm

23  just trying to separate the two.  This applies much more to the

24  Ahan situation.

25         The Trustee has already performed under this

1   its agent.  That's what we have incurred.

2           And I also note, Your Honor, that is what the Trustee

3   wanted to do and that is what counsel has done.

4           THE COURT:  Very well.  Let me tell you what the

5   Court's going to do.

6           I'm going to rule on the motion for protective order.

7   I'm going to make a partial ruling on the application.

8           These are intertwined, and so the ruling should be

9   made in a coordinated fashion.

10          A little bit of background for the record.

11          As I stated on the record at the last hearing --

12   counsel might as well have a seat.

13          MR. LEMLEY:  Thank you, Your Honor.

14          THE COURT:  There is clearly a substantial overlap

15   between information which bears upon various disputes brought

16   before this court, and information which the parties believe

17   relevant to or useful in the State Court litigation, which is

18   ongoing.

19          Whenever you have that situation, there is often a

20   conflict between principles of law.  In a bankruptcy case, a

21   strong principle is, of course, that what the Trustee does, and

22   through the Trustee what Trustee's counsel does, should be

23   readily open to review by parties in interest, particularly

24   where what is before the Court for decision in the bankruptcy

25   case is a question of compensation.

1   reasonably calculated to benefit the estate at the time that

2   those actions were undertaken, then it would not be reasonable

3   to compensation counsel for that activity.

4          It is not a contingency fee type of test where

5   ultimate success is the up or down measure of allowance.

6          In regards to settlement with the Plaintiffs in the

7   State Court action, the so-called 100,000-dollar settlement, Mr.

8   Modanlo, in effect, is asking to see documents that effectuate

9   that settlement to weigh an argument as to whether or not the

10  whole outcome of the settlement is or is not beneficial to the

11  estate.

12         While it might cap directly liability if it foreclosed

13  recoveries otherwise available to the estate or exposed the

14  estate to further liabilities by another party, then weighing

15  the benefit is impacted by these possible collateral outcomes.

16         And it is argued to the Court that the documentation

17  would reflect how vulnerable or not the estate may be on this

18  part.

19         I agree that these documents are directly relevant on

20  the issue of compensation, and I weigh the detrimental effect,

21  if any, of requiring their release as to rights that should be

22  protected to a litigant in the State Court action.

23         As to these documents, on the motion for protective

24  order, the motion is substantially denied as follows.

25         The Court denies the protective order and the Trustee

# EXHIBIT B

IN THE CIRCUIT COURT FOR
MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| RAYMOND SCHETTINO, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No. 220156-Track IV |
| NADER MODANLO, et al. | * | Judge Louise Scrivener |
| Defendants | * | |
| v. | * | |
| MICHAEL AHAN | * | |
| Third Party Defendant | * | |

MOTION TO RECONSIDER
ORDER FOR NEW TRIAL DATED MARCH 31, 2004

COMES NOW Cheryl E. Rose, Trustee for Final Analysis, Inc. ("FAI"), a Defendant and Cross-Plaintiff in this action, by and through counsel, and hereby files this Motion to Reconsider Order for New Trial dated March 31, 2004 granting a new trial as to the jury verdict in favor of FAI for damages of $1,067,000 on Count VI and $230,000 for misappropriation (Counts II and III). In support of this Motion, the Trustee states as follows:

Approximately 20 years ago, the venerable Judge John McAuliffe, sitting on the Circuit Court for Montgomery County, Maryland, heard a Motion to Reconsider in connection with a complex trial over which he had presided. When the Movant's counsel expressed some reservation making an oral argument to the Judge in connection with such motion, Judge McAuliffe basically stated "Please don't be concerned, Counselor. Why I even granted such a

1

(9) person, attentive jury regarding the complex fraud perpetrated by Nader Modanlo

("Modanlo") against FAI and Final Analysis Communication Services, Inc. ("FACS"). While

the parties and the Court expressed concern prior to and during the trial that the jury may not be

able to understand such a complex case where FACS was represented by two (2) sets of counsel,

the jurors performed their public duty and gave twelve (12) days of their undivided, unbiased

efforts to the arguments of counsel, the presentation of evidence and deliberations. Now, nine

(9) months later, this Court has set aside the efforts of the jurors and the resources of the parties

based on a lack of certainty and clarity in the Court's mind. While this is understandable, it is

clearly a mistake for this Court to disturb the jury's decision under these circumstances.

Matters are made more complex for this Court than the jury since three (3) different

judges have considered substantive issues in this case: this Court, Judge Mason and Judge Keir

of the U.S. Bankruptcy Court for the District of Maryland. With each intervention, the presiding

judges become more hesitant to become involved in the case for fear of interfering with events in

other courtrooms. While this Court, understandably, wants to permit Judge Mason to preside

over the remainder of this case with as clean a slate as possible, this Court should not, under

Maryland rules and common law, set aside a jury verdict that took more than a year and hundreds

of thousands of dollars to acquire. Quite frankly, FAI simply does not have the resources to try

this proceeding on multiple occasions.

A review of only some extracts of the evidence presented to the jury reflects that the

collective minds of the jury had clarity and certainty that this Court should not so easily cast

aside. Perhaps the Court's lack of clarity was exacerbated by the trial transcript which

improperly, at times, attributed statements and positions to the wrong counsel. Neverthless,

3