**Date signed July 22, 2004**



```
                                          JOHN C. AKARD
                                       U. S. BANKRUPTCY JUDGE
```

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| In Re: | * | |
| | * | Case No.    01-21039DK |
| FINAL ANALYSIS, INC. | * | Chapter    7 |
| | * | |
| | * | |
| Debtor(s) | * | |

# Memorandum of Opinion on
# Motion for Damages for Violation of the Automatic Stay

On April 26, 2004, Cheryl E. Rose, Chapter 7 Trustee for Final Analysis, Inc filed her Motion to Recover Damages from Final Analysis Communication Services, Inc for Violation of the Automatic Stay (Motion).[1] The court finds that the Motion must be denied[2] and will explain the reasons for its conclusion.[3]

---

[1] Following the abbreviations used in the Motion, the court will refer to Ms. Rose as the Trustee, Final Analysis, Inc as FAI and Final Analysis Communication Services, Inc as FACS.

[2] This Motion is another salvo in the continuing saga of charges and counter charges between the parties to the FAI Bankruptcy. The court has seen enough of these battles to feel that the parties are acting from an emotional, rather than a business, standpoint. At a recent hearing, the court urged the parties to put aside their emotions and mediate their differences with an experienced bankruptcy judge as a mediator. Unfortunately, the court has not seen any indication that the parties have accepted that suggestion.

[3] This court has jurisdiction of the matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and Local Rule 402 of the United States District Court for the District of Maryland referring all cases under Title 11 of the United States Code to the Bankruptcy Judges of this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (D) and (G).

## Facts[4]

The bankruptcy case for FAI was commenced with the filing of an involuntary petition on September 4, 2001. An order for relief was entered and Ms. Rose was appointed the Chapter 7 Trustee on October 16, 2001.

Nader Modanlo owned one half of the stock of FAI. He was the controlling officer and director of FAI until the Trustee was appointed on October 16, 2001. Among FAI's assets was a majority of the outstanding stock in FACS. In January 2002, that stock was sold through a Bankruptcy Court auction to New York Satellite, LLC (NYS). The Motion alleges that Mr. Modanlo controls NYS and that he has always controlled FACS. At the time of the auction, there were allegations of improper influence. The court reopened the auction, which resulted in a higher price to the FAI bankruptcy estate. The unsuccessful bidder and the Trustee continue to seek damages for the alleged improper influence in the auction.

In 2001 nine shareholders of FACS initiated a shareholders' derivative suit against Mr. Modanlo and FACS in the Circuit Court for Montgomery County Maryland (the State Court Action). The Trustee participated in that suit. In July 2003, the jury found that Mr. Modanlo had defrauded FACS and caused damages of more than $6M and that he had defrauded and misappropriated funds of FAI resulting in damages of approximately $1.3M. The court ordered a new trial, but is now considering a Motion for Reconsideration on the granting of the new trial.

The Trustee filed adversary proceeding 03-1110 against Mr. Modanlo asserting that his interference with the bidding process caused the Bankruptcy estate to receive less than it would have otherwise received for the sale of the stock in FACS. That adversary proceeding is pending.

---

[4] The undersigned judge is a visiting judge and has only heard matters in the FAI case for the past few months. Most of the matters recited in the Facts portion of this opinion occurred before the Hon. Duncan Keir. Consequently the recitation of Facts in this opinion is taken mostly from the Motion and should not be considered as findings of fact for anything other than this Motion.

## Preliminary Matters

Prior to the hearing on this matter, FACS filed a motion to continue, asserting that its bankruptcy counsel had resigned and that it was seeking other counsel. The Trustee responded that this was just another delaying tactic by FACS. Because the motion for continuance was filed by a large and respected law firm, the court found that FACS could have adequate representation and denied the motion. When this matter was called for hearing on May 27, 2004, an attorney appeared for FACS to again state that it was looking for bankruptcy counsel. The Trustee asserted that this was a pattern of delay experienced in this case. The court denied the motion for continuance and the attorney who appeared for FACS declined to participate in the hearing.

## First Violation of the Automatic Stay

The Trustee alleges two violations by FACS of the automatic stay contained in §362 of the Bankruptcy Code.[5] She brings the first action under §362(a)(3), which prohibits

> any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

She seeks damages under §362(h), which provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Apparently FAI and FACS were attempting to get a Russian organization to launch two satellites to be used for communications purposes. By letter dated October 19, 2001, a Russian prosecutor requested information from Mr. Modanlo, as President of FAI, in connection with an investigation of a former manager of the Russian portion of the project. An English translation of that letter is attached to this memorandum. On November 29, 2001, Mr. Modanlo had George N. Grammas of the Washington, D.C. law firm of Gardner, Carton & Douglas respond to that letter on behalf of FACS. A copy of Mr. Grammas' letter is attached to this Memorandum.

---

[5] The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to sections are to sections of the Bankruptcy Code unless otherwise specified.

3

The Trustee points out that the letter from the Russian prosecutor is dated three days after her appointment in this case and that Mr. Gammas' answer acknowledged the pending bankruptcy case. The Trustee asserts that FACS obtained possession of property of this bankruptcy estate and/or exercised control over property of this bankruptcy estate by:

a. "Receiving and failing to disclose the Prosecutor's Letter sent by a Russian Prosecutor in the State Court Action; and

b. Preparing a misleading response to the Russian Prosecutor on behalf of FAI, without sharing copies of either letter with the Trustee."

The Trustee asserts that these actions (1) were designed to interfere with the administration of the bankruptcy estate by impairing her investigation of the facts surrounding the State Court Action and concealing wrongdoing by Mr. Modanlo, which would have enabled the Trustee to challenge his bid in this bankruptcy case and (2) willfully and maliciously interfered with the administration of this bankruptcy estate until March 2003, when the Trustee discovered the letters. The Trustee asserts that these actions caused the bankruptcy estate substantial damages and thus she requests an award equal to one half of her $108,000 attorneys' fees in the State Court Action, attorneys fees for this motion in the amount of $5,000 and punitive damages of $100,000. She also requests that the court "order FACS to provide within five (5) days of the entry of this Court's Order, all documents, records, papers and other information in its possession relating to the representation or business affairs of FAI."

Turning first to the request for turnover of documents. In this action the Trustee seeks damages under §362(h), which is quoted above. That section makes no mention of turnover of documents and thus the court must deny the Trustee's request for that relief. Further, the Trustee's pleadings and the testimony showed that many, many documents have been turned over to the Trustee, starting with her appointment as Trustee. Consequently if the court were to consider the document request, it would have to be denied as overly broad.

The Russian prosecutor's request was addressed to Mr. Modanlo as president of FAI. The Trustee had been appointed by the time he received the letter and Mr. Modanlo knew he should turn

4

that letter over to the Trustee. If the Trustee has suffered damages as a result of Mr. Modanlo's failure, the Trustee can pursue those in the adversary proceeding that she already has pending against him.

Presumably the Trustee brought this action against FACS because Mr. Modanlo is president of FACS and he had the response written on behalf of FACS. However, it appears that those were actions of Mr. Modanlo, rather than actions of FACS.

Three separate types of actions are prohibited by §362(a)(3):

- Any act to obtain possession of property of the estate. There is no evidence that Mr. Modanlo took any steps to have the Russian prosecutor send him the letter. Presumably, it was received in the mail. Thus there was no act to obtain property of the estate.

- Any act to obtain property from the estate. There is no evidence of that type of activity in this proceeding.

- Any act to exercise control over property of the estate. The cases that have discussed this provision relate to documents benefitting the estate such as franchise agreements, leases, insurance policies, and claims. On its face, the Russian prosecutor's letter does not suggest a benefit to this bankruptcy estate. Thus the court cannot find that the letter is "property of the estate" for purposes of this section.[6]

The Trustee asserts that having knowledge of the Russian prosecutor's letter would have made FAI's participation in the State Court Action unnecessary or at least much easier. That assertion was not explained in the pleadings or the evidence. While the letter may have lead to some further inquiry, it does not speak of any malfeasance by Mr. Madonlo. The Trustee did not carry her burden of persuasion on this point.

Further, it appears that the Trustee had knowledge of the letter prior to the trial. Her pleadings state that she learned of the letter in March 2003 and the Jury returned its verdict in July

---

[6] The Trustee is entitled to the letter. The court's ruling is limited to the fact that the letter is not "property of the estate" for the purposes of §362(a)(3).

2003. If, as the Trustee alleges, the letter went "to the crux of the issues which are the subject matter of the State Court Action,"[7] the Trustee had the information prior to that trial.[8]

## Second Violation of the Automatic Stay

In October 2003 the Trustee[9] filed a suit for breach of contract against General Dynamics and others in the United States District Court for the District of Maryland. FACS filed a motion to intervene in that suit. The Trustee asserts that the filing of the motion to intervene is an attempt to deprive the Trustee of the control and benefits of the lawsuit.

The Trustee does not point to any specific subsection of §362(a) that supports this claim, and the court had not found one. The filing of a motion to intervene in a suit commenced by the Trustee is akin to the filing a claim in a Bankruptcy case. It is not a violation of the automatic stay of §362.

## Conclusion

For the reasons stated in this memorandum, the Trustee's Motion must be denied.[10]

Order accordingly.[11]

cc:   Attorney for the Trustee
      Attorney of record for FACS
      United States Trustee

### End of Memorandum

---

[7] The Trustee did not offer any evidence to support that assertion.

[8] The result is the same if the Trustee made a typographical error in her pleadings and she meant to say that she did not learn of the Russian prosecutor's letter until March 2004. The jury granted a substantial verdict in favor of the Trustee. If rehearing is denied, the Trustee has her judgment. If rehearing is granted, the Trustee has the letter to use in the retrial.

[9] The pleadings state that FAI filed the suit, but because of the date of filing, the suit must have been filed by the Trustee.

[10] This memorandum shall constitute findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052, which is made applicable to contested matters by Fed. R. Bankr. P. 9014.

[11] This memorandum will not be published.

# GARDNER, CARTON & DOUGLAS

1301 K STREET, N.W.
SUITE 900, EAST TOWER
WASHINGTON, D.C. 20005
(202) 408-7100
FAX: (202) 289-1504
INTERNET: gcdlawdc@gcd.com

WRITER'S DIRECT DIAL NUMBER

GEORGE N. GRAMMAS
(202) 408-7112
ggrammas@dc.gcd.com

CHICAGO, ILLINOIS

MEMBER
WORLD LAW GROUP
A GLOBAL NETWORK
OF INDEPENDENT
FIRMS LOCATED IN
30 COUNTRIES

November 29, 2001

Mr. N.K.Radkovich
Omsk Prosecutor
Legislation Control
At the Particular Secret Facilities
Prosecutor's Office of Russian Federation
644021, Omsk, PO Box 63
B.Khmelnitskogo St., 214

Re:   Final Analysis, Inc.

Dear Mr. N.K.Radkovich:

We are counsel to Final Analysis Communication Services, Inc. ("FACS"). Final Analysis, Inc. ("FAI") owns a majority of the voting capital stock of FACS. We have been asked by FACS to respond to your letter to FAI dated October 19, 2001, because FAI is subject to involuntary bankruptcy proceedings and is under the control of a U.S. Federal Court appointed trustee. FAI does not now have any employees or officers, except Mr. Nader Modanlo, its Chairman and President. FACS now employs some of the former employees of FAI, but most of the FAI personnel who were employed when FAISAT-1 and FAISAT-2v were launched (prior to 1998) are no longer employed by FAI or FACS.

With the assistance of the management of FACS, including Mr. Nader Modanlo, the Chairman and President of both FAI and FACS, we can report the following:

1.   The accounting firm Arthur Anderson audited the financial records of FACS from December 30, 1993 (date of inception) to December 31, 1999, and published audit financial statements (the "Financial Statements"). According to the Financial Statements, during the period 1995 through 1999, FAI made cash payments to PO Polyot and/or Design Bureau Polyot ("Polyot") of $2,526,250. FACS represents to us that this amount was in payments for: (a) efforts related to FAISAT-1 and FAISAT-2v; (b) launches and launch services under a launch services agreement; (c) equipment and software development and support; (d) international regulatory assistance; and (e) other goods and services.

**EXHIBIT**
tabbies

**CONFIDENTIAL**
**D 11623**

GARDNER, CARTON & DOUGLAS
November 29, 2001
Page 2

2.  We have copies (no originals) of acknowledgments (the "Acknowledgments") of receipt of payments from Design Bureau Polyot. According to the Acknowledgments, during the period April 13, 1995 to November 4, 1997, Polyot received payments of $1,159,300.00 from FAI.

3.  Pursuant to a protocol of a meeting (the "Protocol"), dated February 13, 1998, FAI and Polyot agreed that FAI would make a final payment to Polyot of $230,000 for FAISAT-2v. The Protocol is attached as Appendix 1 hereto.

4.  Earlier this year, Polyot confirmed to us that: (a) it had received all payments referenced by the Acknowledgments; (b) it had received the final payment agreed to in the Protocol; and (c) no further amount is payable to Polyot with respect to FAISAT-1 and FAISAT-2v. In connection with this confirmation, we delivered to Polyot copies of the Acknowledgments.

The FACS management reports that it has not found a copy of the underlying contract(s) for FAISAT-2v. FACS intends to continue to search for the contract(s).

FACS requests your assistance in a related matter. Attached as Appendix 2 hereto is a letter, dated November 1, 2001, from Dr. Alexander Ilyin on behalf of Gloria-Polyot. This letter requests payment from FAI of $230,000. Apparently, this request is supported by a document entitled "Agreement Between Final Analysis and Polyot Design Bureau and/or Gloria-Polyot," dated November 21, 1997. This document is also attached as Appendix 2 hereto. We understand this document to relate a payment schedule for the $230,000 amount that subsequently was the subject of the Protocol. Although we have received the confirmation from Polyot referenced by item 4, above, we wish to have your confirmation that FAI has fully satisfied its payment obligation to Polyot relating to the FAISAT-1 and FAISAT-2v effort and that nothing is owed to Gloria-Polyot.

Respectfully submitted,

George N. Grammas, Esquire
Counsel to Final Analysis
Communication Services, Inc.

GARDNER, CARTON & DOUGLAS
1301 K Street, N.W., Suite 900 East Tower
Washington, D.C. 20005
Telephone +1 202 408 7100
Facsimile +1 202 289 1504

DC01/370669.1

CONFIDENTIAL
D 11624

Prosecutor's Office of Russian Federation

Omsk Prosecutor's Office of Legislation Control
At the Particular Secret Facilities

644021, Omsk, PO Box 63
B.Khmelnitskogo St., 214

19 October 2001

Reg. # 66510

Mr. Nader Modanlo
FAI
President

TRANSLATION

Due to the ongoing investigation of financial and business activity of A.I. Ilyin, a former manager of KB PO Polyot, I would like to get from you the following notarized documents:

- Contract between KB PO Polyot and FAI regarding FAISAT-2v;
- A.I.Ilyin's receipts confirming that he received the cash and money transfers on the accounts that he specified for payments under the contracts;
- Money orders for all FAI payments under the on FAISAT-2v development and launch contract.

I also would like you to let me know in writing the total cost of the FAISAT-2v contract, when and where you discussed the cost with A.I.Ilyin, and all the payments (including cash) provided by you or at your request to A.I.Ilyin under this conract.

N.K.Radkovich

Omsk Prosecutor
Legislation Control
At the Particular Secret Facilities



CONFIDENTIAL
D 11080