**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

| | |
|---|---|
| In re: | * |
| | |
| **FINAL ANALYSIS, INC.** | *    **Case No. 01-21039-DK** |
| | **Chapter 7** |
| **Debtor** | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE**
**WITH  NADER MODANLO, FINAL ANALYSIS COMMUNICATION**
**SERVICES, INC. AND NEW YORK SATELLITE INDUSTRIES, LLC**

CHERYL E. ROSE, Trustee of the above-captioned bankruptcy estate ("Estate") of Final

Analysis, Inc. ("FAI"), respectfully requests that this Court approve a compromise of claims

against Mr. Nader Modanlo ("Modanlo"), Final Analysis Communication Services, Inc.

("FACS") and New York Satellite Industries, LLC ("NYSI").  Modanlo holds a general

unsecured claim in this proceeding and FACS previously asserted a claim against the Estate that

was withdrawn.  FAI has brought actions against Modanlo in the Circuit Court for Montgomery

County, Maryland; it has brought an action against Modanlo and NYSI as an adversary

proceeding before this Court; and it has a claim against FACS that, to date, has not been brought.

In support of this Motion, the Trustee states as follows:

**Jurisdiction**

1.      This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Motion is proper in this judicial district pursuant to 28

U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157.

2.      On September 4, 2001 (the "Petition Date"), creditors of Final Analysis, Inc.

("FAI" or "Debtor") filed an involuntary petition under Chapter 7 of the Bankruptcy Code.  On

October 16, 2001, the Court entered an Order for Relief.

3.      On October 25, 2001, the Office of the U.S. Trustee appointed Cheryl E. Rose the Trustee in this case ("Trustee").

**Factual Background**

4.      On April 5, 2001, shareholders (the "Plaintiffs") of Final Analysis Communications Services, Inc. ("FACS") filed suit in the Circuit Court for Montgomery County, Maryland, Case No. 220156 ("Circuit Court Litigation"), against FACS, FAI[1], and Nader Modanlo ("Modanlo") (the controlling principal of FAI) stating claims for declaratory relief, misappropriation of corporate funds, breach of fiduciary duty and other alleged wrongdoing. Modanlo filed a claim against Michael Ahan ("Ahan"), the co-owner of FAI in the Circuit Court Litigation, seeking indemnification and raising his own causes of action, and FAI filed a cause of action against Modanlo in the same proceeding.

5.      Modanlo filed a proof of claim against FAI in the amount of $270,000.00, of which less than $4,700 is a priority claim.

6.      The Plaintiffs in the Circuit Court Litigation filed proofs of claim in this case totaling approximately $150,000,000.00, which included a claim on behalf of FACS for more than $10,000,000.00.  As a result of a court approved settlement, the Plaintiffs' claims, including the claim on behalf of FACS, were reduced to an aggregate of $100,000.00.  Several months ago, the Plaintiffs withdrew the FACS proof of claim they caused to be filed as shareholders of FACS.

7.      The Trustee participated in the Circuit Court Litigation to defend FAI, to pursue claims in the Circuit Court litigation, to minimize any potential claims against the Estate and to

---

[1] FAI was FACS's parent corporation and owner of a majority of its stock.

2

investigate potential claims the Estate may have against third parties resulting from the allegations of the Plaintiffs against FAI and their agents including, without limitation, actions against Modanlo, Ahan, George Grammas, Esq. and Gardner, Carton and Douglas ("GCD") (George Grammas's employer)(George Grammas and GCD are former general counsel to FAI and general counsel to FACS), among others.

8.      After a ten (10) day jury trial, the jury found, inter alia, in favor of FAI against Modanlo for approximately $1,300,000.

9.      Approximately nine (9) months after the jury's verdict, the Court granted Modanlo a new trial.  FAI's motion for reconsideration of the Court's order granting a new trial was recently denied and the Court scheduled the retrial for late September, 2004, thus requiring the Estate to expend substantial resources to retry these claims.

10.     In October of 2003, the Trustee filed a Complaint against GCD in the Circuit Court for Montgomery County, Maryland ("GCD Action") seeking a substantial award of damages.

11.     The Trustee initiated a lawsuit against Modanlo and NYSI under 11 U.S.C. §363(n) of the Bankruptcy Code, and such action is pending.

12.     FAI believes that it holds a claim against FACS, and perhaps others, for conversion of a contract under which FACS received $2,000,000.00 and may be entitled to receive an additional $8,000,000.00.

13.     Modanlo, FACS and NYSI have represented to the Trustee that these entities are not liable to FAI, and the Trustee has substantial concerns about collecting any judgment that might be obtained in the future against any one or more of them.

14.     Using the Trustee's good faith business judgment, the Trustee has determined that the best interests of the Estate are served if she enters into the Compromise with Modanlo, FACS and NYSI (together, the "Modanlo Group") on the terms set forth herein.

### Terms of Compromise

15.     Attached as Exhibit A is the terms of the parties' proposed resolution and compromise which the Trustee seeks the Court to approve.  Exhibit A sets forth the agreement and compromise ("Compromise") between FAI and the Modanlo Group.  The agreement is summarized below:

A.     As indicated, FAI has pending a lawsuit against GCD for tens of millions of dollars, but FAI has been unable to acquire certain files over a period of more than ten (10) months despite: (i) requesting the voluntary turnover in five (5) different communications with GCD; (ii) filing a motion for turn over pursuant to Section 542 of the Code and the Court indicating that GCD should turnover the files to the Trustee; (iii) initiating an adversary proceeding for the turnover of documents; and (iv) filing a motion for Rule 2004 examination to acquire the files.  Upon final judicial approval of this Agreement the Modanlo Group has agreed to withdraw its objection to GCD turning over files to FAI that the Modanlo Group owns or claims to own for purposes of FAI's use pursuant to the general cooperation terms set forth in this Agreement which for purposes of this provision shall be considered a joint interest agreement providing protection of attorney client material, but FACS reserves the right to assert the attorney-client privilege with respect to non-parties to the Agreement who seek to acquire or use any documents that the Modanlo Group owns, claims to own or to which it previously asserted a privilege from the Trustee or any other source.

4

In light of all of these difficulties and the inability to have a Court compel the turnover of the files to date, the Trustee believes there is a significant benefit to having the Modanlo Group consent to the turnover as FACS and NYSI have claimed an interest in such files.

Furthermore, subject to the Court's Order April 15, 2003 the Trustee will agree that FACS and NYSI will have access to all FAI files that were in existence at the time of the filing of the Bankruptcy and that all original documents and any copies thereof (except for publicly filed documents) will be provided to NYSI at the conclusion of the Bankruptcy; upon final judicial approval of this Agreement the Modanlo Group has agreed to withdraw its objection to GCD turning over files to FAI that the Modanlo Group owns or claims to own for purposes of FAI's use pursuant to the general cooperation terms set forth in this Agreement which for purposes of this provision shall be considered a joint interest agreement providing protection of attorney client material, but FACS reserves the right to assert the attorney-client privilege with respect to non-parties to the Agreement who seek to acquire or use any documents that the Modanlo Group owns, claims to own or to which it previously asserted a privilege from the Trustee or any other source.

The Modanlo Group and the Trustee, shall reasonably cooperate to complete this compromise. The Modanlo Group shall make available for review and copying at the Estate's expense any such documents that they possess that the Trustee has not previously obtained or seen from another source. However, the Trustee shall not release or share the nature, existence or contents of such documents to third parties in violation of the terms of this compromise though she may use such documents for FAI's own purposes. Any potential causes of actions against the Modanlo Group discovered in any documentation that the Trustee subsequently

5

receives will nevertheless be released under the mutual release entered by the parties. In addition, the Modanlo Group has agreed to extend the statute of limitations unless already barred for a period of ninety (90) days, but not to exceed 30 days after the motion to approve compromise is denied (if applicable), to bring any additional actions against the Modanlo Group.

B.     The Modanlo Group will pay the sum of $250,000 in cash to "Cheryl E. Rose, Chapter 7 Trustee of FAI" within 30 days of Bankruptcy Court approval of the settlement. Counsel to Mr. Modanlo has confirmed that it is holding these funds in escrow pending Bankruptcy Court approval.

C.     By entering into this Agreement, NYSI, Modanlo and FACS shall waive the claims they have against the Estate (the Trustee believes that none exist), and Modanlo agrees to subordinate his claims to those of all other general unsecured creditors, but retain a priority equal (pari passu) to the claims of Ahan and his related businesses (i.e., Protolex, LLC) (together, "Ahan Affiliates") and the claims of equity shareholders. In the event the Estate recovers sufficient funds to pay all priority claims and general unsecured claims in full (including the unsecured claim of Modanlo), then Modanlo may file a motion to return his claim to a status equal to that of general unsecured creditors and ahead of the claims of the Ahan Affiliates and the equity shareholders. The Trustee will not object to such amended claim or to the above-described motion.

D.     Any other claims by and against the Modanlo Group, its directors, officers, employees and agents (except Gardner, Carton and Douglas, LLP ("GCD") and its attorneys), in their capacity as agents for the Modanlo Group, on the one hand, and the Estate (including its Trustee and agents), on the other hand, known or unknown, disclosed or undisclosed, are released to the extent not provided herein.

6

E.    The settlement and releases between the Modanlo Group and the Trustee are expressly limited to claims among these parties and in no way should be construed as a waiver or release of claims each party to the compromise may have against third parties such as, by way of example and not limitation, GCD and all of its attorneys.  The parties acknowledge that the Trustee and the Modanlo Group are not in agreement that Mr. Modanlo is a joint tortfeasor with GCD or Mr. Grammas but do agree that the settlement proceeds referenced herein are intended by the parties to address FAI's claims asserted or which could be asserted in Montgomery County, in the Bankruptcy Court or elsewhere against the Modanlo Group or any member of it, individually, or as an officer and director of FAI.  The Modanlo Group's payments will be considered merely volunteer payments solely in consideration for the releases set forth herein.  In the event a court later determines that the Modanlo Group's payments are in consideration of joint tortfeasor liability, then the payments will be deemed a dollar for dollar reduction of  GCD's and their attorneys' judicially determined joint liability to FAI (but not a proportionate release or release of GCD or its attorneys sole liability to FAI).  The parties further agree that they cannot agree on a pro rata reduction in GCD's and its attorneys' unliquidated liability to FAI since it is unclear whether Mr. Modanlo and his affiliated entities are joint tortfeasors with GCD and its attorneys.  Notwithstanding the foregoing, the Modanlo Group's payment shall not reduce any punitive damages that GCD or its attorneys are determined to owe to FAI.

F.    Upon final approval of this Compromise, each member of the Modanlo Group will withdraw all pending objections and shall agree to refrain from participating in any future FAI proceedings in any way adverse to the Estate or the Trustee including future objections to administrative fees.  Notwithstanding the foregoing, Modanlo's ability to contest proofs of

7

claims filed by any creditor, which activity will aid the Estate in its administration of claims adjudication, is not impaired; provided, (a) Modanlo shall acquire the prior written consent of the Trustee to object to such claims; or (b) the Trustee has confirmed that she intends to file no additional objections to claims prior to filing a report of proposed distribution; or (c) the Trustee has concluded objecting to claims; or (d) the Trustee's claims against GCD have been finally adjudicated at the trial court stage or settled.  In addition, Modanlo will use his best efforts to encourage those creditors of FAI that have filed claims or hold claims against the Estate and with whom he has a close relationship (i.e., Jan Friis, Mr. and Mrs. Bill Conway, Mr. Yakov Segal and others) to ensure that they take no actions against the Trustee or the agents of the Estate counsel and file no pleadings or papers except those directly related to recovery of their proofs of claim or objection to the proofs of claim filed by other creditors or if such papers have already been filed, he will cooperate and request to have them withdrawn.

G.     In no event will any member of the Modanlo Group purchase the claims of, instigate, cooperate with or participate in any activity by the above referenced individuals in their efforts to undertake any activities other than those directly related to pursuing their proofs of claim; and the Trustee shall not acquire any claims against the members of the Modanlo Group.

H.     The Trustee has agreed not to release documents regarding the Modanlo Group absent a subpoena and reasonable notice to Counsel for the Modanlo Group or disparage the members of the Modanlo Group, subject to Section I immediately below.

I.     Notwithstanding anything herein to the contrary or in the Compromise to the contrary, the Trustee shall not be limited in actions taken in good faith to pursue claims against non-parties to this Agreement including, without limitation, GCD, which the Trustee considers to be the most valuable asset of the Estate.

J.     The Compromise is subject to Bankruptcy Court approval and also the approval of the Board of Directors of FACS (which has been received).

K.     Within twenty-five (25) days of Bankruptcy Court approval of this Agreement, the Trustee will file (a) a notice of dismissal of FAI's action against the Modanlo Group in the Montgomery County Litigation with prejudice; and (b) a notice of dismissal with prejudice of the 363 (n) action with respect to only the Modanlo Group.

L.      It is expressly agreed that the parties make this Agreement to avoid the expense and disruption of litigation.  By making this compromise, no party admits to any liability or wrongdoing.

### Standard for Approving Compromises

16.     Bankruptcy Rule 9019(a) provides, in part, that "the court may approve a compromise or settlement."  It is well settled that a compromise should be approved so long as the terms do not fall "below the lowest point in the range of reasonableness."  E.g., In re W.T. Grant Co., 699 F.2d 599, 608 (2nd Cir.), cert. denied, 464 U.S. 822 (1983); In re Bowman, 181 B.R. 836, 846 (Bankr. D.Md. 1995); Rahman v. Oncology Assoc., P.C., 269 B.R. 139, 149-50 (D. Md. 2001).  Bankruptcy courts generally consider four (4) factors in determining whether to approve a compromise: (i) the probability of ultimate success should the issue be litigated; (ii) the complexity, expenses, and likely duration of such litigation; (iii) the possible difficulty of

collection on any judgment ultimately upheld; and (iv) all other factors relevant to a full and fair assessment of the proposed compromise.  See, e.g., Bowman, 181 B.R. 836.  In passing upon a proposed settlement, "the bankruptcy court does not substitute its judgment for that of the Trustee."  Depo v. Chase Lincoln First Bank, N.A. (In re Depo), 77 B.R. 381, 383 (N.D.N.Y. 1987), aff'd, 863 F.2d 45 (2d Cir. 1988).

17.     The Trustee believes the Compromise is in the best interest of the Estate for numerous reasons.  First, the Estate will recover valuable documentation to pursue its most valuable asset.  In addition, the Estate will recover an additional Two Hundred Fifty Thousand Dollars ($250,000.00).   The compromise also reduces litigation expenses associated with various pending proceedings and claims to be brought against the members of the Modanlo Group, which may exceed hundreds of thousands of dollars, and it will prevent the Modanlo Group from further participating in the administration of this Estate except on the limited basis described above.  Furthermore, the Compromise will reduce the claims of the general unsecured creditors by hundreds of thousands dollars.

18.     Notice of this proposed Compromise is being sent to all creditors and parties in interest.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order:

A.      Approving the Compromise; and

B.      Granting such other and further relief as may be just and proper.

                              **SHULMAN, ROGERS, GANDAL,**
                              **PORDY & ECKER, P.A.**

                       By: /s/ James M. Hoffman
                          James M. Hoffman (#04914)
                          11921 Rockville Pike, Third Floor
                          Rockville, Maryland 20852-2743
                          (301) 230-5243
                          Attorneys for Chapter 7 Trustee

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of August 2004, a copy of the foregoing **Motion to Approve Compromise with Nader Modanlo, Final Analysis Communication Services, Inc. and New York Satellite Industries, LLC ("NYSI") and the proposed Order** were mailed, postage prepaid to:

U.S. Trustee's Office
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

Rodney Glover, Esq.
Attison Barnes, III, Esq.
Wiley Rein & Fielding, LLP
1776 K Street, N.W.
Washington, DC 20006
Attorneys for Nader Modanlo and NYSI

Chip Magid, Esq.
Bruce Trauben, Esq.
Dorsey & Whitney
1001 Pennsylvania Avenue
Washington, DC 20004
Attorneys for Michael Ahan

Joseph Suntum, Esq.
Miller, Miller & Canby
200-B Monroe Street
Rockville, MD 20850
Attorneys for Plaintiffs

Janet M. Nesse, Esq.
Stinson Morrison Hecker, LLP
1150 18th St., N.W., Suite 800
Washington, DC 20036
Attorneys for FACS

Jeffrey M. Schwaber, Esq.
Stein Sperling
25 West Middle Lane
Rockville, MD 20850
Attorneys for FACS

                                              /s/ James M. Hoffman
                                              James M. Hoffman

12