Entered: March 31st, 2022
Signed: March 31st, 2022



**THOMAS J. CATLIOTA**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | | |
|---|---|---|
| In re: | * | Case No.   01-21039-TJC |
| Final Analysis, Inc. | * | Chapter   7 |
| Debtor | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OF DECISION

Two related matters are before the Court.  Cheryl Rose, the Chapter 7 Trustee (the "Trustee") for the estate of the Debtor, Final Analysis, Inc., filed the Application for Authorization to Employ James M. Hoffman, Esq., Offit Kurman, P.A. and Prior Employers as Special Counsel to the Trustee the ("Supplemental Employment Application").  ECF 1502. James Hoffman, as Special Counsel to the Trustee, filed the Response of Special Counsel to Order to Show Cause Concerning Retention and Disclosure Matters.  ECF 1503.  These matters result from a filing by Nader Modanlo asserting numerous deficiencies in the retention and disclosures of Special Counsel and his law firms over the twenty-year history of this case.  ECF 1476.  Early in the case, the Court approved the retention of Mr. Hoffman as Special Counsel, but the three firms that employed him were not retained and he did not submit disclosures required by Federal Rule of Bankruptcy Procedure 2014(a) when he joined new firms.  Mr. Modanlo asserted that the firms were improperly awarded compensation because the Court never

1

approved their retention.  He also contended only one of the firms filed the disclosures required by Rule 2014(a), and the firm's disclosure excluded a substantial direct conflict.  He contended no disclosures were submitted for the two subsequent firms the Special Counsel joined, and one of them had substantial conflicts.[1]

The Court has carefully reviewed the pertinent submissions and the docket in this case. A hearing is not necessary because the facts and legal arguments are adequately presented in the pleadings submitted.  *See* L.B.R. 9013-1(b)(4).  For the reasons that follow, the Court will dissolve the order to show cause with one exception.  A recent disclosure establishes that Special Counsel had an actual, direct conflict representing the Trustee in one limited, self-contained contested matter.  The Court will issue a sanction for the failure to make the necessary disclosure and for representing the Trustee in that contested matter.  The Court also concludes the Supplemental Employment Application is not necessary.  Under Rule 2014(b), Special Counsel's retention as a "named attorney" was sufficient to enable the attorneys in his firms to be employed and compensated.

## Statement of Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334, 28 U.S.C. §157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This matter is a "core proceeding" under 28 U.S.C. §157(b)(2)(A) and the Court has statutory and Constitutional authority to enter a final order.

## Background

---

[1] Mr. Modanlo's allegations are set forth in more detail in the Court's order to show cause, ECF 1497.

"This case has a long and contentious history dating back to September 4, 2001."  ECF 1049 at p. 2.  The Trustee, Final Analysis Communication Services, Inc., an affiliate of the Debtor, Mr. Modanlo, Michael Ahan, and others have been involved in extensive litigation in numerous courts.  Trials have been held in the Circuit Court for Montgomery County, the United States District Court for the District of Maryland, and the bankruptcy court.  *Id.*  In 2014, in an appeal involving Mr. Modanlo's criminal proceedings, the United States Court of Appeals for the Fourth Circuit described the then state of the ongoing and extensive litigation in various courts.  *See United States v. Modanlo,* 762 F.3d 403, 405-407 (4th Cir. 2014).

In 2013, Mr. Modanlo was convicted of ten counts of criminal conduct related to his commercial relationship with the Republic of Iran in connection with activities related to his work with the Debtor.  *Modanlo v. Rose*, 2018 WL 741386 (D. Md. Feb. 5, 2018).  On January 15, 2016, President Obama granted Mr. Modanlo executive clemency and commuted his sentence.  *Id.* at ECF 16-2.  Since that time, virtually all of the litigation in this case has been initiated by Mr. Modanlo.  *See e.g.*, ECF 1377, 1384, 1395, 1397, 1398, 1411, 1412, 1419, 1420, 1422, 1450, 1451, 1476, 1481, and 1487.

In what appeared to be a final step to resolving the case, the Trustee filed the Motion to Authorize Destruction of Various Books, Records and Files Held by Special Counsel.  ECF 1474.  Mr. Modanlo filed a thirty-five page cross-motion raising numerous challenges.  ECF 1476.  He argued, as summarized above, that Special Counsel failed to make the necessary disclosures, was not properly retained, and should be sanctioned by the denial of compensation and the disgorgement of fees.  *Id.* at pp. 4-16.

The Court ruled that Mr. Modanlo waived his right to bring such challenges in a settlement agreement he entered into with the Trustee in 2004.  ECF 1495.  Nevertheless, in light

of its independent duty to ensure that professionals are properly retained after full disclosure, the Court issued the order to show cause requiring Special Counsel to address the retention and disclosure issues. ECF 1497. Special Counsel responded to the order to show cause and filed four verified statements of disinterestedness. ECF 1502-1, 1507, 1508, and 1513. The Trustee filed the Supplemental Employment Application seeking Court approval of three firms that employed Special Counsel during the case. ECF 1502 and 1503.

Mr. Modanlo sent a letter to the Court again requesting permission to respond to the Supplemental Employment Application and Special Counsel's response to the show cause order. ECF 1514. For the reasons set forth in a contemporaneous order, the Court will deny Mr. Modanlo's request.

### Facts

The creditors of the Debtor filed an involuntary petition against it on September 4, 2001. The Court entered an order for relief under Chapter 7 on October 16, 2001. ECF 12. After the Trustee was appointed, she filed an application to retain herself as counsel for the Trustee. ECF 17. The application was approved by order entered October 31, 2001. ECF 22.

The Trustee retained Mr. Hoffman as Special Counsel under a general retainer to (1) represent her in suits relating to the bankruptcy case; (2) investigate and prosecute potential avoidance actions; (3) assist in the preparation of pleadings, motions, and other filings required to administer the estate; and (4) advise her on matters concerning the liquidation of estate property. ECF 38. On November 26, 2001, she filed an Application for Authorization to Employ James M. Hoffman as Special Counsel for the Trustee (the "Employment Application"). *Id.* At the time, Mr. Hoffman was employed by Shulman, Rogers, Gandal, Pordy & Ecker, P.A. ("Shulman Rogers"). The Employment Application stated that Mr. Hoffman had no connections

4

or adverse interest to the Trustee or to the estate but disclosed that Verizon, a creditor of the Debtor, was a client of Shulman Rogers in unrelated matters. *Id*. at ¶¶7-8. An Order Authorizing Employment of James M. Hoffman as Special Counsel for the Trustee was entered on December 14, 2001.[2] ECF 55. The Employment Application did not seek the retention of Shulman Rogers, and the order approving the retention did not approve the firm as counsel for the estate.

On September 9, 2002, Mr. Hoffman filed the First Application for Allowance of Interim Compensation and Reimbursement of Expenses of [Shulman Rogers] as Special Counsel to Chery E. Rose, Chapter 7 Trustee. ECF 178. The application named Mr. Hoffman and Shulman Rogers as "Applicants." *Id.* The application states that "Applicants were retained as special counsel to the Trustee pursuant to an Order entered by this Court on December 14, 2001." *Id.* at p. 2. In addition to Mr. Hoffman's service, the application sought compensation for the fees for seven other timekeepers. *Id.* at pp. 6, 8-15. The application was approved by order entered on December 9, 2002. ECF 196.

Mr. Hoffman filed six subsequent applications for compensation while employed at Shulman Rogers. ECF 273, 404, 499, 576, 621, and 1033, as supplemented by 1044. Each was titled "[Second through Seventh] Application for Allowance of Interim Compensation and Reimbursement of Expenses of [Shulman Rogers] as Special Counsel to [the Trustee]." Each named Mr. Hoffman and Shulman Rogers as "Applicants" and stated words to the effect that Applicants were retained as Special Counsel to the Trustee pursuant to an Order entered by the Court on December 14, 2001. Each disclosed the fees of other attorneys at the firm who worked

---

[2] Although Mr. Hoffman was retained as "Special Counsel" the retention was under 11 U.S.C. §327(a). Neither the application nor the order references §327(e). The conclusions reached in this Memorandum would not differ if the retention had been under §327(e).

5

on the matter and included the required lodestar analysis.  Each was approved by the Court after proper notice.

Mr. Hoffman ended his employment with Shulman Rogers on August 22, 2008, and began employment as a principal with Goren, Wolff, Orenstein, and Hoffman, LLC ("Goren Wolff").  ECF 1059.  On December 15, 2009, he filed the Eighth Application for Allowance of Interim Compensation and Reimbursement of Expenses for James M. Hoffman, Esquire and [Goren Wolff] as Special Counsel to [the Trustee].  ECF 1059.  The application named Mr. Hoffman and the firm of Goren Wolff, as "Applicant"  and stated that  "Applicant was retained as special counsel to the Trustee pursuant to an Order entered by this Court on December 14, 2001."  *Id.* at 2.  Mr. Hoffman was the only timekeeper provided for in this application.  *See, id.* at 15-16.  The application was approved by order entered on January 20, 2010.  ECF 1065.

Mr. Hoffman then separated from Goren Wolff and joined the firm of Offit Kurman, P.A. ("Offit Kurman") on July 23, 2009, where he has remained employed.  ECF 1059.  On August 25, 2010, Mr. Hoffman filed the Ninth Application for Allowance of Interim Compensation and Reimbursement of Expenses of for James M. Hoffman, Esquire and [Offit Kurman] as Special Counsel to [the Trustee].  ECF 1072.  The application named Mr. Hoffman and the firm of Offit Kurman as "Applicant" and stated that "Applicant was retained as special counsel to the Trustee pursuant to an Order entered by this Court on December 14, 2001."  *Id.* at 2.  In addition to Mr. Hoffman's service, the application sought compensation for fees of two timekeepers.  *See id.* at pp. 14-15.  The application was approved by order entered on October 20, 2010.  ECF 1088.

Mr. Hoffman filed three subsequent applications for compensation while employed at Offit Kurman.  ECF 1353, 1439, and 1509.  Each named Mr. Hoffman and Offit Kurman as "Applicants" and stated words to the effect that Applicants were retained as special counsel to

the Trustee pursuant to an order entered by this Court on December 14, 2001. Each disclosed the fees of other attorneys at the firm who worked on the matter and included the required lodestar analysis. Each was, or contemporaneously herewith is, approved by the Court after proper notice.[3]

## Conclusions of Law

In the Supplemental Employment Application and Special Counsel's response to the show cause order, the Trustee and Special Counsel address several potential defects in Special Counsel's retention and disclosures. The first is that Special Counsel, not Shulman Rogers, was retained to represent the estate, but the firm received substantial compensation through seven fee applications. The second is that Special Counsel left Shulman Rogers for two subsequent firms that were compensated without the Trustee seeking authority to retain them. A third is that when Special Counsel became employed at the new firms, he did not file Rule 2014(a) disclosures. Finally, Special Counsel recently disclosed a connection he and Shulman Rogers had with a creditor of the Debtor that was previously undisclosed. As will be shown, the lack of disclosures is the most troubling of these issues, and requires, at the least, a close review of the disclosures made by the Special Counsel in the verified statements of disinterestedness.

The employment of attorneys by a bankruptcy trustee is governed by 11 U.S.C. §327,[4] which is intended to ensure that "all professionals . . . tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary duties." *Romer v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994). Section 327 allows a trustee to hire an attorney who is disinterested and has no interests adverse to the estate. §327(a).

---

[3] In the most recent application, the Court denied Special Counsel's fees for responding to the disclosure deficiencies addressed herein.

[4] Hereinafter, all statutory citations are to Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§101 *et seq*., as currently in effect.

A disinterested person is defined by §101(14) as a person who

(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not, within 2 years before the [petition date,] a director, officer or employee of the debtor; and
(C) does not have an interest martially adverse to the interest of the estate…by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

§101(14).  While the bankruptcy code does not define an "interest adverse to the estate,"

bankruptcy courts have held that it means either

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2nd Cir. 1990)

(citations omitted); *see In re Crivello*, 831 F.3d 835 (7th Cir. 1998) (adopted the two-alternatives

definition); *In re Johnson*, 312 B.R. 810, 812 n.8 (Bankr. E.D. Va. 2004) (mentioning *Arochem*

*Corp.,* 176 F.3d at 629 for its two-alternatives definition of adverse interest).  An actual dispute

has been defined as "active competition between two interests, in which one interest can only be

served at the expense of the other."  *In re Johnson*, 312 B.R. at 822.

Section 327(c) carves out a limited exception to the disinterested person requirement

where representation of a creditor does not pose an actual conflict of interest.  Section 327(c)

does not, however, abrogate the disclosure requirements.  Courts have applied §327(c) to cases

where proposed counsel engaged in post-petition representation of creditors.  *See e.g., In re*

*AroChem Corp.*, 176 F.3d 610; *see also, e.g.*, *In re Fondiller*, 15 B.R. 890 (B.A.P. 9th Cir.

1981).

Rule 2014(a) requires a trustee to disclose in an application for employment "all of the

person's connections with the debtor, creditors, any other party in interest, their respective

8

attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee." Rule 2014(a). Rule 2014(a) also requires that the application be accompanied by a verified statement of the person to be employed setting forth all of these connections. Rule 2014(a).

The duty to disclose under Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under §327 and to make an informed decision on whether the engagement is in the best interest of the estate. *In re Lewis Roads, LLC*, 2011 Bankr. LEXIS 4827, *25 (Bankr. E.D. Va. Dec. 9, 2011) (citing *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005)). Disclosures made pursuant to Rule 2014 must be explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest. *Id.* (citing *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 662 (Bankr. N.D. Ill. 2001)). The duty to disclose does not end with the initial application—the employed person has a continuing duty to disclose connections under Rule 2014. *Id.* at *11 n.10; *In re NNN 400 Capitol Ctr. 16 LLC*, 632 B.R. 243, 261 (D. Del. 2021) ("These obligations begin with the application to be employed and continue throughout the case; failure to comply may, at the bankruptcy court's discretion result in the law firm's disqualification.").

The Court will begin by addressing the adequacy of the Special Counsel's and the law firms' retention, before turning to the late filed disclosures. The Employment Application sought only to employ Mr. Hoffman as Special Counsel and did not seek to retain Shulman Rogers. The order approving the application approved Mr. Hoffman as Special Counsel for the Trustee. ECF 55.

Rule 2014(b) provides that "if a named attorney . . . is employed, any partner, member, or regular associate of the partnership, corporation, or individual may act as attorney . . . so employed, without further order of the court." Rule 2014(b) "allows for the employment of the other members of [the] named attorney's firm without additional or amended applications for employment." *In re McKenzie*, 449 B.R. 306 (E.D. Tenn, 2011). The Rule

> supports the unremarkable proposition that when the bankruptcy court approves [an application] to employ partner X of a law firm, all the attorneys at the firm may work on the case 'without further order of the court.' A rule requiring [the applicant] to reapply to the bankruptcy court any time a different attorney performs billable work would be unworkable.

*Stanley v. Keravis*, 273 B.R. 614, 617 (N.D. Cal. 2002).

Mr. Hoffman was the "named attorney" in both the Employment Application and the order approving the application. ECF 38 and 55. In accordance with Rule 2014(b), once Mr. Hoffman was retained as the named attorney, "any partner, member, or regular associate of . . . [Mr. Hoffman] may act as attorney . . . so employed, without further order of the court." Therefore, Shulman Rogers itself was not required to be retained for attorneys of the firm to be compensated, although any award of compensation of course is subject to the obligation to provide proper disclosures under Rule 2014(a). That issue is discussed below.

Here, the Court addresses whether the Trustee was required to file an application to retain Goren Wolff and Offit Kurman when Special Counsel joined those firms. The Trustee did not file new applications. Special Counsel continued to represent the Trustee as he had at Shulman Rogers, using other attorneys as needed. After filing seven applications of Special Counsel when employed with Shulman Rogers, Special Counsel filed the eighth application of Special Counsel while he was employed at Goren Wolff (rather than the first application of Goren Wolff). After

leaving Goren Wolff and becoming employed at Offit Kurman, he filed the ninth application of Special Counsel, and so on.

In this District, the use of "named attorney" representation is rare. The better and current approach is to retain the firm at the outset and not use "named attorney" retention, certainly in cases where it is anticipated that the services of other attorneys in the firm will be used. But the Court will not review a retention arrangement made in 2001 by 2022 standards.

At least one court has held that a retention application is required when the named attorney joins a new firm. *McKenzie*, 449 B.R. at 317 ("a new application would be required if the new firm had different members"). That procedure is certainly preferred. A retention application provides direct notice and opportunity to object to the involvement of the new firm rather than indirectly through disclosures alone or subsequent fee applications. And Rule 2014(a) disclosures must be made for the firm whether or not a retention application is filed. Special Counsel and the Trustee do not dispute that, in hindsight, retention applications should have been filed.

The question is whether the Court should take adverse action for the failure to file the retention applications. The Court will not do so. A literal reading of Rule 2014(b) does not require a new application to be filed when a named attorney moves to a new firm to enable for attorneys in that firm to be compensated. It allows attorneys who work in the same firm with the named attorney to act "without further order of the court." The Trustee and Special Counsel acted on the understanding that Rule 2014(b) did not require them to file applications to retain the firms, as established by their filing, ECF 1502 at ¶12, and the seriatim nature of the fee applications. Special Counsel's employment with the new firms was made clear in the first paragraph of the pertinent compensation applications. ECF 1059 at pp. 1-2; ECF 1072 at pp. 1-

2.  Many years have passed and no one has raised this issue before Mr. Modanlo.  Accordingly, under the circumstances of this case, the Court concludes that attorneys in the firms were adequately employed under §327 through the "named attorney" arrangement, and could be compensated under §330.

This conclusion presupposes the firms are disinterested as shown by proper disclosures. The Court turns to that question for each firm.

***Shulman Rogers***

The Employment Application disclosed the connections Shulman Rogers had to the Debtor, identifying that the firm represented Verizon in matters unrelated to the Debtor's case. No party objected to the application and the Court approved the retention of Mr. Hoffman as Special Counsel.  The disclosure was accurate from the initiation of the retention until at least November 2005.  Therefore, there is no basis to question the fees paid to Special Counsel or Shulman Rogers from December 2001 to November 2005.

Recently, however, Mr. Hoffman filed a Third Amended Verified Statement of Disinterestedness Pursuant to Bankruptcy Rule 2014, supplementing the disclosure relating to his employment at Shulman Rogers.  ECF 1513.  It states the Office of the U.S. Trustee raised an issue that was omitted from prior disclosures and that falls within the disclosure requirements of Rule 2014.

During Mr. Hoffman's representation of the Trustee, Mr. Hoffman and Shulman Rogers also represented Gregory P. Johnson, Esq. in "multiple cases" in which Mr. Johnson served as a

12

Chapter 7 trustee. *Id*. Mr. Hoffman "presumably continued to do so" while litigating against

Mr. Johnson in this case on behalf of the Trustee.[5] *Id*. at ¶6.

On November 11, 2005, Mr. Johnson filed a motion to allow the claim of Gloria Polyot,

Claim 84, as an informal proof of claim. ECF 501. *See* ECF 1502-1 at ¶5; ECF 1513 at ¶5. The

motion asserted that emails the creditor sent to Mr. Hoffman, as counsel for the Trustee, met the

requirements for the informal proof of claim doctrine. ECF 501 at ¶¶ 8, 9, 32, 34, 38, and 47.

Mr. Hoffman, on behalf of the Trustee, filed an opposition to the motion, which stated that Mr.

Hoffman had no recollection of receiving documents attached to the email, stated he reviewed

the filings and stated his belief about the matter. ECF 510 at ¶¶9, 34. The opposition asked the

Court to conclude that Mr. Hoffman's lack of recollection established the documents were not

submitted as a matter of fact, and therefore the Court should deny the motion. *Id*. at ¶34. At the

hearing, Mr. Johnson called Mr. Hoffman, the Trustee's (and his) counsel, to testify to the facts

about the receipt of the emails. ECF 558. The Court granted the motion and allowed the

informal proof of claim by order entered on June 23, 2006.[6] ECF 554. Mr. Johnson left the

practice of law and did not represent the creditor in the case after 2006. ECF 1502-1 at ¶¶5-6.

When Mr. Johnson filed the motion in November 2005, Mr. Hoffman did not amend his

disclosure to state that he and the firm represented an attorney who represented a creditor in the

case. As he acknowledges, this was an oversight because the relationship with Mr. Johnson is a

---

[5] Special Counsel states that he and Shulman Rogers "presumably" represented Mr. Johnson during this period. A brief check of CMECF verifies that he was actively engaged in litigation on behalf of Mr. Johnson in at least one case between November 2005 and June 2006. *See, e.g., In re Beverly Byrd and Ralph Byrd*, Case No. 04-35620, ECF 134, 135, 139, 142, 193, 194, 199, 200, 219, 284, 294, 295, 300, 301, 302, 304, and 332 (motions, oppositions, deposition notices field by Mr. Hoffman in his representation of Mr. Johnson during this period).

[6] Creditors of the Debtor filed a motion to reconsider the Court's decision, which was denied. ECF 559, 560, and 565. The matter was appealed, and the appeal was dismissed because the District Court determined that the bankruptcy court's order was not a final, appealable order and denied the creditors request to pursue an interlocutory appeal. *Friis v. International Research Centre Gloria-Polyot, et al.*, Mem. Op. Nov. 22, 2006 (Case No. 8:06-cv-02368-AW). Although Mr. Johnson remained attorney of record on the appeal, it appears he had no role.

connection with the attorney for a creditor and therefore must be disclosed under Rule 2014(a). The relationship was disclosed for the first time on February 2, 2022, when Mr. Hoffman filed the Third Amended Verified Statement of Disinterestedness Pursuant to Bankruptcy Rule 2014. ECF 1513.

The error was more than mere lack of disclosure. Mr. Hoffman had an actual, direct conflict. He was representing the Trustee directly against Mr. Johnson, who was his client in "multiple cases," at least one of which was being intensely litigated at the same time. *See* n. 5. Moreover, Mr. Johnson sought relief based on Mr. Hoffman's personal actions, which implicated his recollection and belief. And the Trustee asked the Court to deny relief against Mr. Johnson's client based on Mr. Hoffman's personal actions, recollection, and beliefs. Thus Mr. Hoffman's actions and credibility, including his testimony, were directly adverse to his client. In the contested matter initiated by Mr. Johnson, Mr. Hoffman was not disinterested.

Once a potential conflict is identified, the firm must disclose it to the court. *In re BH&P*, 949 F.2d 1300, 1317 (3rd Cir. 1991). Negligently failing to make a required disclosure will not absolve a firm of the requirement. *Id.* at 1318. Lawyers who fail to disclose timely and completely their conflicts proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order. *In re NNN 400 Capitol Ctr. 16 LLC*, 632 B.R. at 261 (citing *In re BH&P, Inc.*, 949 F.2d at 1317); *In re Crivello*, 134 F.3d at 836.

When faced with late disclosure of an actual conflict, disqualification is appropriate. *In re NNN 400 Capitol Ctr. 16 LLC*, 632 B.R. at 259 ("A law firm found to possess such an adverse interest during the case may be disqualified, at the court's discretion. If a law firm is found to have an actual conflict of interest, disqualification is mandatory."). In that event, numerous courts have required denial of all fees. *See id.* (affirming, *inter alia*, bankruptcy court's order

disqualifying the debtor's law firm, requiring law firm to disgorge all fees, and denying any fees

and expenses in connection with representation of the debtor); *see also, In re Crivello*, 134 F.3d

at 841 (remanding to the bankruptcy court to consider whether the denial of new fees was a

sufficient sanction in light of a willful failure to disclose conflicts).  Other courts have concluded

that, even where a firm must be disqualified, courts still have some discretion in deciding what

sanction is appropriate.  *In re Kendavis Industries Int'l, Inc.*, 91 B.R. 742, 762 (Bankr. N.D. Tex.

1988) (denying fifty percent of all fees and disallowing the retainer paid by the debtors); *In re

Wynne Residential Asset Mgmt., LLC*, 2009 WL 5169371 at *17-18 (Bankr. W.D.N.C. Dec. 18,

2009) (recognizing that usually no compensation is allowed but noting that no actual prejudice

occurred and awarding the conflicted firm fifty percent of requested fees and out-of-pocket

expenses).  The Court is aware of no case where a court did not impose a sanction on a firm that

failed to disclose an actual, direct conflict.

Here, Special Counsel's conflict arose in the single, separate contested matter brought by

Mr. Johnson.  The conflict existed because of the attorney-client relationship between Mr.

Hoffman and Mr. Johnson.  That relationship had no effect on any other representation of the

Trustee by Special Counsel or the firm.  The Court will not sanction Special Counsel or the firm

for representation on matters outside the contested matter.

Nevertheless, a sanction is required.  The conflict was actual, direct and, it must be said,

obvious.  Complete and candid disclosure is indispensable to the Court's discharge of its duty to

assure the attorney's eligibility for employment.  Failure to faithfully disclose conflicts usurps

from parties-in-interest the opportunity to timely object to employment and circumvents the

Court's role as the arbiter of disinterestedness.  Acting in the face of an undisclosed conflict

undermines a core pillar of the federal bankruptcy system, that trustees and their counsel "tender

undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary duties." *Romer*, 19 F.3d at 58.

The contested matter is long resolved, so an order of disqualification for the contested matter lacks meaning. The Court will disgorge $15,000 of fees from Special Counsel, which is substantially all of the fees incurred by Special Counsel for the dispute with Mr. Johnson's client. ECF 576 at pp. 13-14. In doing so, the Court takes into account the failure to disclose the conflict and the conflict itself. The Court also takes into consideration the superficial nature of the conflict description when finally disclosed in the supplemental statement. It states only that Special Counsel "presumably" represented Mr. Johnson when Mr. Johnson "entered his appearance" in the case to file a motion for a late claim, ECF 1513, ¶¶5, 6, and 7, and does not disclose that Special Counsel was actively engaged in litigation representing Mr. Johnson while actively engaged in litigation against him. Disclosures made pursuant to Rule 2014 must be explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest. *Midway Indus. Contractors, Inc.*, 272 B.R. at 662. The sanction also takes into account the failure to file disclosures as described below.

### Goren Wolff

Mr. Hoffman joined Goren Wolff in August 2008. The firm had three attorneys and no connection to the Debtor. *See* ECF 1502 at ¶8. He filed one application for compensation on December 15, 2009, which was approved on January 10, 2010. ECF 1059 and 1065. He did not file Rule 2014(a) disclosures when he joined the firm. Nothing in the record suggests the firm had any connection to the case that needed to be disclosed. In the usual case, a verified statement would be filed to that effect when Special Counsel joined the firm. The lack of such a statement will be excused in this case.

***Offit Kurman***

Mr. Hoffman joined Offit Kurman on or about July 23, 2009.  He did not file Rule 2014(a) disclosures when he joined the firm.  In response to the show cause order, he filed three verified statements of disinterestedness addressing his time at Offit Kurman.  ECF 1502-1, 1507, and 1508.  The verified statements establish that that the firm had one connection to the Debtor when Mr. Hoffman joined, and three attorneys later joined the firm that had connections to the Debtor.  None of these connections caused Offit Kurman to be nondisinterested.

Richard Mirsky joined Offit Kurman in 2005 and was employed there when Mr. Hoffman joined the firm in 2009.  He worked there until May 2013.  Mr. Mirsky represented the petitioning creditors in this case on September 4, 2001.  ECF 1 at p. 2.  At that time, he was employed by the law firm of Poppleton, Garrett & Pollott, P.C., where he worked from 2000 to 2005.  ECF 1502-1 at ¶35.  The proceeding to determine whether an order for relief should be entered was short-lived.  *See* §303(h).  As Chairman and President of the Debtor, Mr. Modanlo signed a Response to Involuntary Petition on September 27, 2001, stating the board of directors was deadlocked and the Debtor could neither consent nor contest to the involuntary petition.  ECF 7.  The response, however, admitted the statutory predicates for the entry of an order for relief—the Debtor was insolvent and not paying its bills as they come due.  *Id*.  The docket does not show any filings, discovery or litigation over the appropriateness of the order for relief, and the order was entered on October 16, 2001.  Special Counsel's supplemental affidavit states that, according to the docket, Mr. Mirsky has made no other filings in the case.  *Id*. at ¶38.  The Court's review of the twenty-year docket establishes the same, other than the proofs of claims described below.

Mr. Mirsky filed a proof of claim on behalf of petitioning creditor Yakov Segal on December 26, 2001. Claim 16-1. The Trustee objected to the claim. ECF 598. Although Mr. Mirsky remained counsel of record, Mr. Segal filed a *pro se* opposition to the objection and appeared without counsel at the hearing on the objection on January 25, 2008. *See* ECF 625, 700, and 707. The Court sustained in part and overruled in part the objection to the claim by order entered on January 31, 2008. ECF 703. Mr. Mirsky did not participate in the claim objection proceeding through any court filing or hearing. Mr. Segal was later involved in a dispute in the case not connected to his claim. He was represented by different counsel beginning no later than February 2008. *Id.* at ¶41; ECF 711. Mr. Mirsky did not appear on his behalf.

Mr. Mirsky filed a proof of claim on behalf of petitioning creditor Daedalian Systems Corporation, Claim 17-1, on December 26, 2001. A Notice of Transfer of the Claim to ASM Capital, LP was filed January 8, 2007. ECF 588. Mr. Mirsky also filed a proof of claim on behalf of petitioning creditor Capitol Coalitions on January 4, 2002. Claim 19-1. A Notice of Transfer of the Claim to ASM Capital, LP was filed December 10, 2007. ECF 662. The Trustee objected to the claims on December 11, 2007, stating she did not receive sufficient documentation in support of the claims. ECF 663. She withdrew the objection on May 9, 2008, stating she received verification in support of the claims. ECF 927. There has been no activity on the claims since that time. Nothing in the record establishes Mr. Mirsky represented ASM Capital, LP at any time.

While employed by Offit Kurman, Mr. Mirsky did not provide any services to the estate or appear in any fee application. *Id.* at ¶¶43, 44, and 45.

Mr. Mirsky's employment at Offit Kurman did not cause the firm to be nondisinterested. In 2009, he had no adverse interest to the Debtor or actual or potential conflict. The Court had long since resolved the involuntary petition, which was granted without dispute. Mr. Mirsky apparently had no connection to the petitioning creditors after 2002 but, even if he represented them behind the scenes, two of those claims were purchased and Mr. Mirsky had no further role in them. The third claim was subject to an objection proceeding in which Mr. Mirsky did not participate but was resolved. Those matters were completely resolved by the time Mr. Hoffman joined the firm.

Offit Kurman hired Edward Tolchin as a partner on June 22, 2012. ECF 1502-1 at ¶17. By 2012, Special Counsel had represented the Trustee for three years as an attorney at Offit Kurman. Upon being retained, Mr. Tolchin filed Mr. Modanlo's Notice of Potential Conflicts and Waivers. ECF 1335. It stated Mr. Tolchin represented Mr. Modanlo or companies controlled by him since 2004, and was representing Mr. Modano in this case. After describing potential conflicts, the document stated that both Mr. Modanlo and the Trustee waived any potential conflict arising from Mr. Tolchin's representation of Mr. Modanlo. No creditor, other party in interest or the U.S. Trustee raised any objection to the disclosure or the waiver.

Mr. Hoffman also filed a supplemental affidavit disclosing that the wife of Mr. Modano retained Mr. Tolchin in 2014 in a matter unrelated to the Debtor or the bankruptcy case. ECF 1508. This representation would not cause Offit Kurman to be disinterested under §327(a).

Mr. Hoffman's affidavit addresses an erroneous time entry made by Mr. Tolchin. ECF 1502-1 at ¶¶16-23. Mr. Tolchin performed no work on this case, but a time entry (.3 hours for $115.50) made for Mr. Tolchin was a billing error and has been rectified. *Id.* at ¶¶20-21. The

Court is satisfied with Mr. Hoffman's representation that the funds related to Mr. Tolchin's erroneous time entry have been returned to the estate.

Mr. Tolchin's filing did not relieve Special Counsel of his continuing obligation under Rule 2014(a) to update the disclosure on behalf of the firm, but it did disclose Mr. Tolchin's connection to the Debtor and the nature of the conflict.  The Court will not revisit the relationship eight years later.

As addressed above, Gregory Johnson represented a creditor of the Debtor from November 2005 through June 2006, while Special Counsel was employed at Shulman Rogers. In 2006, Mr. Johnson left the practice of law.  He returned to the practice of law and, on April 16, 2013, Offit Kurman employed Mr. Johnson as a partner.  ECF 1502-1 at p. 11.

While at Offit Kurman, on August 2, 2016, and December 12, 2016, Mr. Johnson billed time reviewing and revising the Trustee's motion to determine the priority of Mr. Modanlo's claim and researching the location of files to return to Mr. Modanlo.  *See* ECF 1439-2 at p. 4 (a total of 2.7 hours were billed at $360 per hour for a total of $972).  Mr. Johnson also billed on May 23, 2017, for time reviewing and revising an application for compensation.  *Id.* at p. 6 (a total of 1.7 hours were billed at $360 per hour for a total of $612.00).

Mr. Johnson had no connection to this case for more than seven years prior to joining the firm.  His client's claim had long since been resolved.  None of the work he did on behalf of the Trustee was connected to his client's claim.  ECF 1502-1 at ¶¶4-15.

Mr. Johnson's representation of Gloria Polyot did not cause Offit Kurman to become nondisinterested when he joined the firm in 2013.  The representation was seven years earlier.  It related to a single, self-contained contested matter.  Although his representation of Gloria Polyot

in 2005 presented an actual conflict for Special Counsel and Shulman Rogers at that time, by 2013 Mr. Johnson had no adverse interest, actual conflict, or potential conflict.

Further, under §327(c), a professional is not automatically disqualified from employment for prior representation of a creditor unless there is an objection "in which case the court shall disapprove such employment if there is an actual conflict of interest." Mr. Johnson did not have an actual conflict when he joined Offit Kurman.

On May 31, 2017, Offit Kurman employed Stephen Metz as a partner. ECF 1502-1 at ¶29. Mr. Metz was previously employed at Shulman Rogers. There, he worked on the Debtor's case with Mr. Hoffman. *See Fee Applications* at ECF 78, 273, 404, 499, 576, 621, and 1033. After Mr. Hoffman left the firm, Mr. Metz filed a notice of withdrawal of appearance as counsel of record for the Trustee on October 14, 2008. *See* ECF 1027. Mr. Metz subsequently noticed to the Court his representation of creditor Liquidity Solutions, Inc., an unsecured creditor with three claims totaling $336,872.54. ECF 1028. Liquidity Solutions acquired the claims between September 3, 2008 and September 16, 2008. ECF 1012, 1013, and 1024. On Liquidity Solutions's behalf, Mr. Metz filed a statement in support of the Trustee's motion seeking court approval of a compromise with various creditors. ECF 1028. Mr. Metz did not appear at the hearing on the motion. ECF 1032, 1036. He does not appear on the docket in connection with any other matter on behalf of a creditor after withdrawing from representation of the Trustee. Mr. Metz has billed less than one hour time representing the Trustee while at the firm addressing issues relating to Mr. Modanlo's actions. ECF 1509-1 at pp. 2-4.

Mr. Metz's representation of the Debtor while employed at Shulman Rogers did not cause Offit Kurman to become nondisinterested when he joined the firm in 2017. Neither did Mr. Metz's brief representation of Liquidity Solutions. The representation was nine years earlier

and was exceedingly limited.  Further, the representation was not substantive—his client simply stated it supported a motion filed by the Trustee.  Had the disclosure been made in 2013, no one could have credibly argued it caused Offit Kurman to become nondisinterested.  His minimal representation of the Trustee at Offit Kurman is allowed under §327(c) because he holds no actual conflict.

The foregoing resolves the Special Counsel and law firm retention and disclosure issues.  The Court is left with the disposition of the Supplemental Employment Application.  ECF 1502.  The Trustee filed it "out of an abundance of caution" in light of the questions raised about the lack of the law firms' retention.  *Id*.  The Court concluded above that the attorneys in the firms were adequately employed under §327 through the "named attorney" arrangement, and could be compensated under §330.  This conclusion renders the Supplemental Employment Application moot, and it will be denied on that basis.

## Conclusion

For the foregoing reasons, the Court will dissolve the show cause order entered at ECF 1497 except that it will order Special Counsel to disgorge fees in the amount of $15,000 to the estate.  The Court also will deny the Supplemental Employment Application as moot.  A separate order will follow.

cc:    Debtor
       Trustee
       Trustee's Counsel
       Mr. Nader Modanlo
       United States Trustee

## End of Memorandum of Decision

22